UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PYNQ LOGISTICS SERVICES, INC., <br><br>   Plaintiff, <br><br>   v. <br><br> FEDEX GROUND PACKAGING SYSTEM, INC., et al., <br><br>   Defendants. | Case No. 23-cv-05881-SK <br><br> **ORDER ON MOTION TO COMPEL ARBITRATION** <br><br> Regarding Docket No. 25 |

This matter comes before the Court upon consideration of the motion to compel arbitration filed by Defendant FedEx Ground Packaging System, Inc. ("FedEx"). For the reasons stated below, the Court GRANTS that FedEx's motion to compel and STAYS this action pending arbitration. The Court FURTHER GRANTS that FedEx's Request for Judicial Notice pursuant to Federal Rule of Evidence 201.

**BACKGROUND**

Pursuant to an Independent Service Provider ("ISP") Agreements between Plaintiff PYNQ Logistics Services, Inc. ("PYNQ") and FedEx, PYNQ owned and operated FedEx Ground delivery routes that dispatched out of FedEx Stations located in Brookings, Oregon and Arcata, California. (Dkt. No. 20 (First Amended Complaint ("FAC")), p. 1 and ¶¶ 19.) PYNQ, a corporation with its principal place of business in Alameda County, California, contracted for FedEx Ground Contracted Service Areas ("CSA") to deliver packages to and pick up packages from residences and businesses serviced by FedEx Ground Stations in Brookings, Oregon and Arcata, California. (*Id.*, ¶ 1.) FedEx is a Delaware corporation with its principal place of business in Moon Township, Pennsylvania. (*Id.*, ¶ 2.)

Tara Wright ("Wright") formed PYNQ in August 2020 after having over 30 years of experience as a commercial airline pilot. (*Id*., ¶ 148.) Before contracting with FedEx Ground, Wright did extensive research on several different companies with varying business opportunities. (*Id*., ¶ 149.) Wright reached out to a CSA route broker, Route Consultant, who is one of the leading brokers of FedEx Ground routes, in July of 2020 to discuss what investing in a CSA would entail. (*Id*.) Wright also took online classes offered by Route Consultant to better educate herself on FedEx routes before contracting with FedEx, and she chose to contract with FedEx after "extensively researching her options[.]" (*Id*., ¶ 150; *see also* ¶ 153 ("In addition to Route Consultants' online classes and educational information, Wright researched FedEx Ground extensively through as many as five other sources."), ¶ 154.) Wright had incurred significant expenses to educate and prepare herself. (*Id*., ¶ 155.)

On November 7, 2020, PYNQ took over the ISP Agreement for the CSA in the Arcata area. (*Id*., ¶ 159.) PYNQ invested more than $1.125 million to buy the FedEx routes. (*Id*.) On June 25, 2022, PYNQ signed new ISP Agreements, one for a new route in the Brookings area and one for a smaller route in the Arcata area. (*Id*., ¶ 171.) The operative ISP Agreements relevant to PYNQ's claims are attached as Exhibits 3 and 5 to the Declaration of Gaving Jensen. (Dkt. No. 25-3.) Under the ISP Agreements, PYNQ was a "corporate business entity that provide[d] package pickup and delivery services with its own vehicles and its own employees" and was "free to or not to, separately contract with and provide services to other customers." (Dkt. No. 25-3, Exs. 3 and 5 at §1.1(C).) The ISP Agreements state that "[t]he Parties intend to create by this Agreement a business to business relationship and not one of employment." (*Id*. at §1.2.)

The ISP Agreements contain Pennsylvania choice-of-law provisions. (*Id*. §18.10.) The ISP Agreements also contain the following arbitration provision:

> The Parties agree that any Dispute, including without limitation the scope or applicability of this agreement to arbitrate, shall be determined by final binding arbitration. The arbitrator shall have exclusive authority to resolve any Disputes concerning the formation, existence, validity, enforceability, interpretation, or scope of this agreement to arbitrate.

(*Id*. §16.3.)

2

1    FedEx now moves to compel arbitration and to stay this action pending the arbitration.

## ANALYSIS

### A.    Legal Standard Applicable to Motions to Compel Arbitration.

Pursuant to the Federal Arbitration Act ("FAA"), arbitration agreements "shall be valid, irrevocable, and enforceable, save upon such grounds that exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. Once the Court has determined that an arbitration agreement involves a transaction involving interstate commerce, thereby falling under the FAA, the Court's only role is to determine whether a valid arbitration agreement exists and whether the scope of the parties' dispute falls within that agreement. *United Computer Systems v. AT&T Corp.*, 298 F.3d 756, 766 (9th Cir. 2002); *see also Lim v. TForce Logistics, LLC*, 8 F.4th 992, 999 (9th Cir. 2021) ("In deciding whether to compel arbitration under the FAA, a court's inquiry is limited to two 'gateway' issues: '(1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue.'") (quoting *Chiron Corp. v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000)).

However, these two "gateway issues can be expressly delegated to the arbitrator where 'the parties *clearly and unmistakably* provide [for it].'" *Lim*, 8 F.4th at 999-1000 (quoting *Brennan v. Opus Bank*, 796 F.3d 1125, 1130 (9th Cir. 2015)). An agreement to delegate these issues to the arbitrator "is simply an additional, antecedent agreement the party seeking arbitration asks the federal court to enforce, and the FAA operates on this additional arbitration agreement just as it does on any other." *Rent-A-Ctr., W., Inc., v. Jackson*, 561 U.S. 63, 70 (2010). Where an agreement clearly and unmistakably delegates arbitrability questions to the arbitrator, the Court's "inquiry focuses on whether the agreement to delegate arbitrability – the delegation clause – is itself unconscionable." *Lim*, 8 F.4th at 1000. "[T]he party opposing arbitration bears the burden of proving any defense, such as unconscionability." *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1260 (9th Cir. 2017).

### B.    FedEx's Motion to Compel Arbitration.

Here, PYNQ does not dispute that it entered into agreement with an arbitration provision or that the arbitration agreement contains a delegation clause, clearly and unmistakably delegating

3

arbitrability to the arbitrator. Instead, PYNQ merely asserts a defense of unconscionability. Because the arbitration agreement contains a delegation clause that clearly and unmistakably delegates arbitrability to the arbitrator, PYNQ must demonstrate that the *delegation clause* is unconscionable.

### 1. Choice of Law.

The parties dispute whether the Court should determine unconscionability under Pennsylvania or California law. The agreement at issue contains a choice-of-law provision selecting Pennsylvania law. "A federal court sitting in diversity applies the forum state's choice of law rules." *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010). Therefore, the Court will apply California's choice of law rules to determine whether the Pennsylvania choice of law provision is enforceable. Pursuant to California law, the Court "must first determine 'whether the chosen state has a substantial relationship to the parties or their transaction, . . . or whether there is any other reasonable basis for the parties' choice of law.'" *Bridge Fund Capital Corp. v. Fastbucks Franchise Corp.*, 622 F.3d 996, 1002 (9th Cir. 2010) (quoting *Nedlloyd Lines B.V. v. Superior Court*, 3 Cal. 4th 459, 466, 11 Cal.Rptr.2d 330, 834 P.2d 1148 (1992)). If either of those tests is met, "the court must next determine whether the chosen state's law is contrary to a fundamental policy of California." *Id.* (internal quotation marks and citation omitted). If such a conflict exists, the court must determine "whether California has a materially greater interest than the chosen state in the determination of the particular issue." *Id.* (internal quotation marks and citation omitted). "If California possesses the materially greater interest, the court applies California law despite the choice of law clause." *Id.* at 1003.

The party seeking to enforce the choice of law provision has the burden of demonstrating that the chosen state has a substantial relationship to the parties or their transaction or that a reasonable basis otherwise exists for the choice of law. *See Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001). If the proponent of the choice of law provision satisfies either test, the provision "generally will be enforced unless the other side can establish both that the chosen law is contrary to a fundamental policy of California and that California has a materially greater interest in the determination of the particular issue." *Id.* Here, FedEx's principal place of

4

business is Pennsylvania. (Dkt. No. 20, ¶ 2.) Therefore, FedEx has demonstrated that Pennsylvania has a substantial relationship to the parties and to the contract between it and PYNQ.[1] The burden then shifts to PYNQ to show that Pennsylvania is contrary to a fundamental policy of California *and* that California has a materially greater interest in the determination regarding arbitration and the delegation clause. PYNQ has made no effort to show that Pennsylvania law is contrary to a fundamental California policy. Thus, the Court will apply Pennsylvania law.

### 2. Unconscionability of the Delegation Clause.

Under Pennsylvania law, which is similar to California law, PYNQ must demonstrate that the delegation provision is both procedurally and substantively unconscionable. *Portnoy v. Dollar Fin. Corp.*, 2009 WL 10699012, at *3 (C.D. Cal. Aug. 11, 2009) (citing *Salley v. Option One Mortg. Corp.*, 925 A.2d 115, 119-120 (Pa. 2007) ("a contract or term is unconscionable, and therefore avoidable, where there was a lack of meaningful choice in the acceptance of the challenged provision and the provision unreasonably favors the party asserting it.")).

PYNQ claims that the delegation provision is procedurally unconscionable because it did not have a genuine choice regarding arbitration. According to PYNQ, while the parties were able to negotiate some aspects of the ISP agreements, PYNQ did not have a genuine opportunity or time to negotiate the arbitration provision, including the delegation provision, if it wanted to do business with FedEx. (Dkt. No. 28 at pp. 7-8.) PYNQ contends it only had eleven days to review the specific terms included in the initial ISP Agreement. PYNQ argues that each time it signed new ISP agreements, the arbitration provisions were not negotiable. (*Id*. at 8.) The court in *Portnoy*, applying Pennsylvania law rejected similar arguments where the contract involved two corporate entities. *Id*., 2009 WL 10699012, at *4. The court reasoned that Pennsylvania courts examine the parties' relative bargaining positions and the degree of economic compulsion motivating the party asserting unconscionability. *Id*. at *3. The court noted that contracts

---

[1] PYNQ argues that California has a *greater* interest to the claims in this case but that is not the standard. (Dkt. No. 28 at pp. 5-6.) The standard is whether Pennsylvania has a *substantial* relationship to the parties or their transaction.

between "commercial entities with meaningful choices at their disposal . . . will rarely be deemed unconscionable." *Id*. at *4 (quoting *Denlinger, Inc. v. Dendler*, 608 A.2d 1061, 1068 (Pa. Super. 1992)). Additionally, although there was a difference in bargaining power between the two parties, the plaintiff was not forced to purchase the franchise; the arbitration provision was not in fine print or convoluted language; and the plaintiff had time to review the agreement before he signed it. *Id*. The Court finds *Portnoy* is both analogous and persuasive. Accordingly, the Court finds that PYNQ fails to demonstrate procedural unconscionability.

Additionally, even if PYNQ were able to demonstrate procedural unconscionability, it fails to demonstrate substantive unconscionability. A contract is substantively unconscionable if the contractual terms are "unreasonably favorable to the drafter." *Worldwide Underwriters Ins. Co. v. Brady*, 973 F.2d 192, 196 (3d Cir. 1992). Notably, PYNQ does not even argue that any portion of the delegation provision unreasonably favors FedEx or is one-sided. Instead, PYNQ makes a novel argument, based on a convoluted and unsupported interpretation of the arbitration agreement, as PYNQ contends that the arbitrator would be powerless to send the dispute back to court if the arbitrator were to find that the delegation provision was unconscionable. PYNQ relies on the provision that limits the arbitrator's ability to enter an award that alters, amends or modifies the terms and conditions of the agreement. (Dkt. No. 28 at p. 9 (citing § 16.5(D) of ISP Agreements).) Additionally, the agreement uses the term "competent authority" instead of arbitrator or court in the provision which states "if any provision of this agreement conflicts with the Applicable Law under which this Agreement is to be construed or if any such provision is held invalid by a competent authority, such provision will be deemed to be restated to reflect as nearly as possible the original intentions of the Parties . . . ." (Dkt. No. 28 at p. 9 (citing § 16.8(D) of ISP Agreements).) However, PYNQ has no support – either from the plain language of the agreement or cases construing similar language – for its argument that an arbitrator is not a competent authority. The Court finds no reason why the arbitrator, as the one designated under the agreement to make the unconscionability determination, is not a competent authority. Moreover, the Court finds that there is no support for PYNQ's argument that an arbitrator could not send the dispute back to Court if it determined that the delegation provision was unconscionable. Finally,

6

the Court notes that, even if PYNQ were correct, it fails to demonstrate that the delegation provision favors one party over the other.  If the delegation provision applies mutually, then any limitation on the arbitrator's power would apply mutually, to whichever party invoked arbitration. Here, there is no indication that the delegation provision is one-sided.

PYNQ also argues, again without support, that its claim under the Racketeer Influenced and Corrupt Organizations Act, 18 USC §§ 1962(c), should be separated and remain in court because PYNQ also brings this claim against the other defendant in this case, Gatesman, Inc. d/b/a The Gatesman Agency, who is not a party to the arbitration agreement.  However, the Supreme Court has rejected this argument. *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 20 (1983) ("federal law *requires* piecemeal resolution when necessary to give effect to an arbitration agreement").

Thus, the Court finds that PYNQ fails to demonstrate substantive unconscionability as well and, thus, grants FedEx's motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, the Court GRANTS FedEx's motion to compel arbitration and STAYS this action pending the arbitration.  The Court FURTHER ORDERS that the parties shall file a joint status report regarding the status of the arbitration proceedings every four months hereafter until the arbitration proceedings are completed.

**IT IS SO ORDERED**.

Dated: May 6, 2024

_____
SALLIE KIM
United States Magistrate Judge